# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOVON CHARLES DAVIS,

Defendant-Appellant.

UNPUBLISHED
March 22, 2016

No. 320773
Berrien Circuit Court
LC No. 2013-000303-FC

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317; assault with intent to commit murder, MCL 750.83; felon-in-possession of a firearm, MCL 750.224f; carrying a concealed weapon, MCL 750.227; possession of a firearm during the commission of a felony, MCL 750.227b; and domestic assault third offense, MCL 750.81(4). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of imprisonment of 600 months to 100 years for the murder conviction, 300 to 900 months for the assault conviction, 76 to 240 months for the felon-in-possession and carrying a concealed weapon convictions, and 46 to 180 months for the domestic assault conviction, preceded by two years for the felony-firearm conviction. Defendant appeals by right. We affirm defendant's convictions but remand for correction of the judgment of sentence to reflect that the sentence for carrying a concealed weapon is concurrent with the felony-firearm sentence.

Defendant's convictions arise out of the murder of Gary Alilovich and the assault of Heather Britt on January 18, 2013, at the house of Crystal McKenzie in Benton Harbor.

Defendant first argues that the trial court either erred in allowing the late endorsement of Robert Jones, who testified about statements that defendant made to him after defendant was placed in the same jail block as he, or for refusing to grant a continuance so that he could have time to prepare to challenge Jones's testimony. The trial court denied defendant's request for an adjournment. Thus, the issue whether the trial court erred in not adjourning trial as a remedy for the late endorsement is preserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). But, because defendant never argued that the late endorsement was not supported by good cause, that issue is unpreserved. *Id.* We generally review a trial court's decision to permit the late endorsement of a witness for an abuse of discretion. *People v Callon*, 256 Mich App 312, 325-326; 662 NW2d 501 (2003). A trial court abuses its discretion when its

-1-

decision falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). A trial court's decision on a motion for an adjournment is generally reviewed for an abuse of discretion. *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). We review unpreserved claims of error, however, for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

At least 30 days before trial, the prosecutor must send to defendant or defense counsel a list of the witnesses that she intends to produce at trial. MCR 767.40a(3). The prosecutor may add or delete witnesses from this list "at any time upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4).

The prosecutor did not learn about Jones and the possibility of his testifying until four days before trial. She sent a detective to interview Jones, and it was not until the day before trial that the prosecutor learned the details of Jones's proposed testimony. The late discovery of Jones provided good cause for the late endorsement. *People v Gadomski*, 232 Mich App 24, 37; 592 NW2d 75 (1998); *People v Canter*, 197 Mich App 550, 563; 496 NW2d 336 (1992).

"Ordinarily, late endorsement should be permitted and a continuance granted to obviate potential prejudice that might result. All that is necessary is that the objecting party have time to interview the witness before he is called to testify, and to investigate facts bearing on his credibility, when appropriate." *People v Harrison*, 44 Mich App 578, 586; 205 NW2d 900 (1973) (internal citations omitted). The prosecutor agreed not to call Jones as a witness until the end of trial, and there was no dispute that trial would last several days. Accordingly, defendant had the opportunity to interview Jones. This opportunity obviated any potential prejudice that might result from the late endorsement. *Id.*; see also *People v Lino*, 213 Mich App 89, 92-93; 539 NW2d 545 (1995), overruled on other grounds *People v Carson*, 220 Mich App 662 (1996). The trial court's decision to deny an adjournment fell within the range of reasonable and principled outcomes. *Unger*, 278 Mich App at 217.

Defendant next argues that the trial court erred when it ordered that his sentence for carrying a concealed weapon run consecutively to his sentence for felony-firearm. The prosecutor concedes error, and we agree: A conviction for carrying a concealed weapon, MCL 750.227, will not support a felony-firearm conviction, and thus cannot be ordered served consecutively to a felony-firearm sentence. See MCL 750.227b(3); *People v Bonham*, 182 Mich App 130, 137; 451 NW2d 530 (1989). We remand for correction of the judgment of sentence.

In a Standard 4 brief and in a supplemental Standard 4 brief, defendant argues that the trial court improperly denied him copies of transcripts and court records. A trial court's obligation to provide an indigent defendant with transcripts and court documents depends on whether the transcripts and documents are desired to pursue an appeal of right, an appeal by leave, or other post-conviction relief. MCR 6.433; *People v Caston*, 228 Mich App 291, 294; 579 NW2d 368 (1998). The present case involves an appeal by right. Thus, MCR 6.433(A) applies, and it provides:

> An indigent defendant may file a written request with the sentencing court
> for specified court documents or transcripts, indicating that they are required to

pursue an appeal of right. The court must order the clerk to provide the defendant with copies of documents without cost to the defendant, and, unless the transcript has already been ordered as provided in MCR 6.425, must order the preparation of the transcript.

After he was sentenced, defendant filed an affidavit of indigency and requested the appointment of appellate counsel. The trial court appointed appellate counsel for defendant. An appointment order must direct the court reporter to prepare and file the trial transcripts, the sentencing transcript, and transcripts of other proceedings that the court directs or the parties request. MCR 6.425(G)(2). "If the appointed lawyer timely requests additional transcripts, the trial court shall order such transcripts within 14 days after receiving the request." *Id.* Taken together, MCR 6.425(G)(2) and MCR 6.433(A) indicate that once a transcript has been provided to appellate counsel, the defendant is not entitled to additional copies of the transcript.

Appellate counsel requested a copy of each transcript. There is no claim that appellate counsel's request was not fulfilled. Thus, under the court rules, defendant was not entitled to his own copy of the transcripts. Additionally, in the court record, there is no written request filed by defendant for documents that are in the court record. Absent such a request, the trial court had no duty to give copies of any court documents to defendant. See MCR 6.433(A). Defendant was not improperly denied access to transcripts and court records.

Also in his Standard 4 brief and supplemental Standard 4 brief, defendant argues that the trial court erred in denying his motion for an adjournment after he retained counsel and that the denial of the adjournment resulted in a violation of his right to be represented by counsel of his own choice. We review a trial court's decision on a motion for an adjournment for abuse of discretion, *Coy*, 258 Mich App at 17, and review constitutional issues de novo, *Callon*, 256 Mich App at 315.

An adjournment must be based on good cause. *Coy*, 258 Mich App at 18. Factors to consider whether good cause exists include " 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' " *Id.* (citation omitted). The Sixth Amendment right to counsel guarantees a defendant, who does not require appointed counsel, the right to choose who will represent him. *United States v Gonzalez*, 548 US 140, 144; 126 S Ct 2557; 165 L Ed 2d 409 (2006).

When a defendant seeks an adjournment to retain or replace counsel, a trial court must carefully balance the defendant's right to counsel of his own choice against the public's interest in the orderly administration of justice. *United States v Burton*, 584 F2d 485, 489 (DC Cir, 1978). A key consideration to the right of counsel is a reasonable opportunity to employ and consult with counsel. See *United States v Johnston*, 318 F2d 288, 291 (CA 6, 1963) ("But if a defendant in a criminal case desires to hire his own counsel, in order that the object of the Sixth Amendment be met, such defendant must have fair opportunity and reasonable time to employ counsel of his own choosing."). "Once a fair and reasonable initial opportunity to retain counsel has been provided, and adequate counsel obtained, the court, mindful of the accused's interest in having counsel in whom he has confidence, is free to deny a continuance to obtain additional

counsel if, upon evaluation of the totality of the circumstances, it reasonably concludes that the delay would be unreasonable in the context of the particular case." *Burton*, 584 F2d at 490.

What is a reasonable delay necessarily depends on all the surrounding facts and circumstances. Some of the factors to be considered in the balance include: the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case. [*Id.* at 490-491 (footnotes and citations omitted).]

The trial court's denial of defendant's request for an adjournment did not deny defendant a fair opportunity and reasonable time to retain counsel of his own choice. Defendant was arraigned on January 22, 2013, but he did not retain counsel until just before the trial that began January 14, 2014. Additionally, trial had already been adjourned twice. The second adjournment was because the trial court granted defendant's request to remove his first appointed counsel. Notably, defendant did not seek retained counsel after his first attorney withdrew. He waited seven weeks, until the eve of trial. Retained counsel then requested an adjournment of at least four months even though the case did not present any complex issues. While defendant did not want his appointed replacement defense counsel to represent him, he made no specific claim that this counsel was unprepared, incompetent to try the case, or that he and counsel had irreconcilable differences. Under these circumstances, the trial court's denial of an adjournment fell within the range of reasonable and principled outcomes. *Unger*, 278 Mich App at 217. Defendant was not denied his Sixth Amendment right to be represented by an attorney of his choice.

Defendant argues in his Standard 4 brief that he was denied effective assistance of counsel because defense counsel only had "mere weeks" to prepare for trial. In *United States v Cronic*, 466 US 648, 658-662; 104 S Ct 2039; 80 L Ed 2d 657 (1984), the United States Supreme Court identified three "rare" situations in which counsel's performance is so deficient that prejudice is presumed. One of these situations is where counsel is called upon to render assistance under circumstances where competent counsel very likely could not. *People v Frazier*, 478 Mich 231, 243 n 10; 733 NW2d 713 (2007). Circumstances "may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate . . . ." *Cronic*, 466 US at 659.

Defense counsel represented defendant for at least seven weeks before trial began. In *Cronic*, 466 US at 663-665, the Supreme Court held that the defendant was not entitled to a presumption of prejudice where counsel represented the defendant for a shorter amount of time.

Additionally, defendant has not identified any circumstances that would likely have prohibited any attorney, even a fully competent one, from providing effective assistance of counsel. *Cronic*, 466 US at 658-662. Defendant's claim that he was denied effective assistance of counsel based on the length of defense counsel's representation is without merit.

Additionally, defendant argues in his Standard 4 brief that based on defense counsel's actual performance, he was denied effective assistance of counsel. To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008).

Defendant claims that defense counsel was ineffective because he failed to object to Jones's testimony as a violation of defendant's Sixth Amendment right to counsel. In *Massiah v United States*, 377 US 201, 206; 84 S Ct 1199; 12 L Ed 2d 246 (1964), the United States Supreme Court held that "once a defendant's Sixth Amendment right to counsel has attached, he is denied that right when federal agents deliberately elicit incriminating statements from him in the absence of his lawyer." *Kuhlmann v Wilson*, 477 US 436, 457; 106 S Ct 2616; 91 L Ed 2d 364 (1986). The concern of *Massiah* and a subsequent line of cases "is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation." *Id.* at 459. "[A] defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id.*

Jones testified that he came into contact with defendant after defendant was moved into the same jail block as he. There is no record evidence to indicate that the police purposely placed defendant in the same block as Jones or that the police and Jones had worked out a plan to gain incriminating statements from defendant. Nothing on the record refutes that Jones, on his own and without any instruction or encouragement from the police, brought defendant's statements to the attention of the prosecutor and police. So, an objection to Jones's testimony on the basis that it violated defendant's Sixth Amendment right to counsel would have been futile; failing to assert a futile objection is not ineffective assistance. *Unger*, 278 Mich App at 256.

Defendant also claims that defense counsel was ineffective because he failed to conduct an investigation, to impeach witnesses, to contact experts in self-defense and forensic pathology, to hire a private investigator, and to call character and alibi witnesses. These claims, to be successful, required a testimonial record. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Although the trial court held an evidentiary hearing on defendant's motion for a new trial, defendant wrote and submitted his Standard 4 brief before the hearing was held. In that brief, defendant leaves it to this Court to search for a factual basis to sustain his claims. As such,

the claims are abandoned. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).[1] We have nevertheless reviewed them and find them to be without merit.

Defendant next argues in his Standard 4 brief that he was denied due process and a fair trial by misconduct of the police and the prosecutor. We review these unpreserved claims of error for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

There is no merit to defendant's claim that he was denied due process because the police and the prosecutor failed to conduct a gunpowder residue test or failed to interview witnesses who would have provided evidence that he was not the perpetrator. We have previously held that because the police are not required to seek and find exculpatory evidence, a defendant is not denied due process when the police fail to test the defendant's hands for gunpowder residue. *People v Miller*, 211 Mich App 30, 43; 535 NW2d 518 (1995). Moreover, defendant bore the burden of furnishing the Court with a record to verify the factual basis of any argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Nothing in the record indicates that any witness who had knowledge of the events on January 18, 2013, was not interviewed.

Defendant's next claim, that he was denied due process because the prosecutor failed to correct inconsistent or changed statements of witnesses, is abandoned. Defendant does not identify the alleged inconsistent or changed statements, nor does he state the witnesses who gave them. See *Petri*, 279 Mich App at 413 (holding an appellate court need not consider arguments unsupported by citations to the record). We additionally reject defendant's argument that he was denied due process because the prosecutor or the police coerced McKenzie into giving false testimony. There is no record evidence of any acts of intimidation by the police or the prosecutor. See *Elston*, 462 Mich at 762. We also reject defendant's argument that the prosecutor's use of other acts evidence denied him due process and a fair trial. No evidence of other acts by defendant was admitted at trial.[2]

Next, in his Standard 4 brief, defendant argues that he is entitled to a new trial because the trial court was biased against him. Because defendant never moved to disqualify the trial court from presiding over his trial, the issue is unpreserved. *People v Mixon*, 170 Mich App 508, 514; 429 NW2d 197 (1988), rev'd in part on other grounds 433 Mich 852 (1989). Our review is therefore limited to plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Due process requires an unbiased and impartial decision-maker. *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). A judge is not impartial when the

---

[1] Because defendant fails to establish that defense counsel's performance, in any manner, was deficient, his claim that he is entitled to a new trial based on the cumulative effect of the deficiencies in counsel's performance is without merit. See *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

[2] Because defendant fails to establish any misconduct by the police or the prosecutor, defendant's claim that he is entitled to a new trial based on the cumulative effect of the misconduct is also without merit. See *Dobek*, 274 Mich App at 106.

judge is personally biased or prejudiced for or against a party. MCR 2.003(C)(1)(a); *Cain*, 451 Mich at 494-495. There is a heavy presumption of judicial impartiality. *Cain*, 451 Mich at 497.

We reject defendant's claim that the trial court was biased against him because it refused his requests for his own separate copy of the transcripts and court records. As discussed *supra*, defendant was not entitled to his own copy of the transcripts and he filed no written request for court documents. Because the trial court was under no duty to provide defendant with copies of the transcripts and court documents, the trial court's failure to provide defendant with transcripts and court documents is not evidence of bias.

We also reject defendant's claim that the trial court was biased against him because it made several prejudicial and erroneous rulings. The only ruling referenced by defendant is the trial court's decision to deny an adjournment on the first day of trial. The mere fact that a judge rules against a litigant, even if the ruling is later determined to be erroneous, is not sufficient to show bias. *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (quotation omitted). The trial court's ruling does not display a deep-seated antagonism against defendant. The trial court denied the motion to adjourn because the motion was made on the eve of trial, the case was almost a year old, and had already been adjourned twice. Nothing in the trial court's ruling indicates that it wanted defendant to be represented by counsel who was unfit and ill-prepared to try the case. Defendant has failed to overcome the strong presumption of judicial impartiality. *Cain*, 451 Mich at 497.

Defendant further argues in his Standard 4 brief that his convictions are not supported by sufficient evidence. We review de novo a challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). We view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt. *Id.*

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). Malice is the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). The elements of assault with intent to murder are (1) an assault, (2) with the actual intent to kill, and (3) that if death results, would make the killing murder. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). The elements of domestic assault are (1) the commission of an assault or an assault and battery and (2) the defendant and the victim are spouses or former spouses, are in or had a dating relationship, have a child in common, or are residents of the same household. MCL 750.81(2); *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011); *People v Corbiere*, 220 Mich App 260, 266; 559 NW2d 666 (1996).

Britt testified that she and defendant had been dating "off and on" for six years and that they lived together. On January 18, 2013, Britt and Alilovich, whom Britt had previously dated,

were at McKenzie's house. McKenzie testified that after she and defendant arrived, defendant started to hit Britt in the face with his hands after she pushed him. Alilovich, using words only, tried to stop defendant. Defendant pushed Alilovich, and then started to hit Britt in the face with his fists. Alilovich tried to stop defendant again, telling defendant to "get the fuck back." McKenzie did not see Alilovich with a knife. According to McKenzie, while she was in the kitchen fighting with Ashley Davis, defendant's cousin, she heard a gunshot in a bedroom. She ran toward the bedroom, and saw defendant pointing a gun at Alilovich. Alilovich was on his knees and begging defendant not to shoot. McKenzie ran out of the bedroom after she saw defendant take a second shot at Alilovich. McKenzie heard a third gunshot when she was outside. Britt's young son, who was in another bedroom, testified that he heard two gunshots and then Alilovich say "please don't do this." He then heard two more gunshots. According to her son, Britt came into the bedroom; her left chest was bleeding. Defendant also came into the bedroom and started to hit Britt in the face. He then stomped on her face more than once.

Dr. Robert Clark, qualified as an expert in pathology, performed an autopsy on Alilovich. Clark testified that Alilovich had gunshot wounds to the back of his right elbow, the back of his right shoulder, and his head. Clark opined that the cause of death was exsanguination from a gunshot wound to the chest. Alilovich had no wounds that suggested he had been in a fight. Dr. Glen Hastings, qualified as an expert in general and trauma surgery, treated Britt in the emergency room. Hastings testified that Britt had a concussion, four or five fractured ribs on each side of her chest, fractures in the lumbar spine, a fracture of the right orbital bone, and five gunshot wounds, including one to her left breast.

Three bullets were recovered from Alilovich's body, and two were recovered from the bedroom where defendant had stomped on Britt's face. Lieutenant Jeff Crump, qualified as an expert in firearms and tool mark identification, testified that he compared the five bullets to test shots from the .32-caliber revolver that was found in the woods. Crump identified four of the five bullets as having been fired from the revolver, and he could not exclude the revolver as having fired the fifth bullet. The revolver was silver with a black handle, and Britt had previously seen defendant with a silver .32-caliber revolver with a black handle. In his interview, defendant told two detectives that he shot Alilovich two times. According to Jones, defendant said that after his family members arrived, he and Alilovich had more words. He then pulled out the gun and shot Alilovich twice and Britt once.

Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the prosecution proved the elements of second-degree murder, assault with intent to commit murder, and domestic assault beyond a reasonable doubt. *Cline*, 276 Mich App at 642. The convictions are supported by sufficient evidence.

The elements of felon-in-possession of a firearm (specified felony), MCL 750.224f(2), are (1) the defendant possessed a firearm, (2) the defendant was previously convicted of a specified felony, (3) less than five years have passed since the defendant successfully completed probation or parole, completed a term of imprisonment, and paid all fines with regard to the underlying felony, and (4) the defendant's right to possess a firearm has not been restored. M Crim JI 11.38a. The parties stipulated that defendant had previously been convicted of possession with intent to deliver cocaine, which is a specified felony, see MCL 750.224f(10)(b), and that defendant was on parole on January 18, 2013. Viewing this evidence, as well as the

evidence previously summarized, in a light most favorable to the prosecution, a rational trier of fact could have found that the prosecutor proved the elements of felon-in-possession of a firearm beyond a reasonable doubt. [3] The conviction is supported by sufficient evidence.

The elements of carrying a concealed weapon are (1) the defendant knowingly carried a firearm and (2) the firearm was concealed on the person. M Crim JI 11.1. A firearm is concealed if there is "some kind of withdrawal from observation so as to hide or secrete an object." *People v Kincade*, 61 Mich App 498, 504; 233 NW2d 54 (1975). McKenzie testified that she went to Britt's house to buy cocaine and defendant was there. Jones testified that defendant said he had a gun with him when he opened the door for McKenzie. According to McKenzie, she went to a store with defendant. McKenzie testified that she did not see a gun until after she heard the gunshot while she was fighting with Ashley. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the prosecutor proved the elements of carrying a concealed weapon beyond a reasonable doubt *Cline*, 276 Mich App at 642. The conviction is supported by sufficient evidence.

The elements of felony-firearm are that "the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499; 597 NW2d 864 (1999); MCL 750.227b. Viewing the evidence that supports the convictions of second-degree murder, assault with intent to commit murder, domestic assault, and felon-in-possession of a firearm in a light most favorable the prosecution, a rational trier of fact could have found that the prosecutor proved the elements of felony-firearm beyond a reasonable doubt. *Cline*, 276 Mich App at 642. The conviction is supported by sufficient evidence.

Defendant next argues in his Standard 4 brief that he is entitled to a new trial because the cumulative effect of the errors identified in the brief that occurred during pretrial proceedings and at trial denied him a fair trial. "While it is possible that the cumulative effect of a number of errors may constitute error requiring reversal, only actual errors are aggregated to determine their cumulative effect." *People v Rice (On Remand)*, 235 Mich App 429, 448; 597 NW2d 843 (1999) (quotation marks and citations omitted). Because defendant has not established any actual errors, no cumulative effect of errors denied defendant a fair trial. *Id*.

In his Standard 4 brief, defendant also argues that he was denied effective assistance of appellate counsel because appellate counsel failed to raise the issues that he asserts in his Standard 4 brief.[4] The test for ineffective assistance of appellate counsel is the same as the test

---

[3] "The prosecutor must prove that the defendant's right to possess a firearm has not been restored only if the defendant produces some evidence that his right has been restored." *People v Perkins*, 262 Mich App 267, 271; 686 NW2d 237 (2004), aff'd 473 Mich 626 (2005), and clarified on other grounds *People v Smith-Anthony*, 494 Mich 669, 682 (2013). Defendant did not present any evidence that his right to possess a firearm had been restored.

[4] In his supplemental Standard 4 brief, defendant repeats the argument that appellate counsel was ineffective for failing to raise the issue that the trial court's refusal to adjourn trial after he retained counsel resulted in a violation of his right to be represented by counsel of his own choice.

applicable to a claim of ineffective assistance of trial counsel. *Uphaus (On Remand)*, 278 Mich App at 186. None of the issues raised in defendant's Standard 4 brief entitles defendant to relief. Consequently, appellate counsel's failure to raise those issues did not fall below objective standards of reasonableness or result in prejudice. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000) (stating that counsel is not required to advocate a meritless position).

In his supplemental Standard 4 brief, defendant argues that he was denied due process because the trial court sat as both the district court and the circuit court. We review this unpreserved claim of error for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

In 2003, pursuant to MCL 600.401, the Berrien County Trial Court adopted a plan of concurrent jurisdiction. See Administrative Order 2015-11 of the Berrien County trial court. Under this plan, each judge in the court is conferred with jurisdiction to act in all proceedings in which jurisdiction was in the circuit court, the probate court, or the district court. *Id.* Defendant has not provided any authority to suggest that this plan of concurrent jurisdiction violates a defendant's right to due process. Accordingly, defendant has failed to show plain error. *Carines*, 460 Mich at 763.

Defendant next argues in his supplemental Standard 4 brief that the trial court erred in refusing to recuse itself from proceedings regarding his motion for a new trial, which was based on claims of ineffective assistance of counsel. Although defendant provides law regarding disqualification, the issue is abandoned. In his argument, defendant does not articulate any ground for why the trial court was disqualified from presiding over further proceedings. He has left it to this Court to discover the factual basis and rationalize the legal basis for the claim. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . .").

Defendant also argues in his supplemental Standard 4 brief that the trial court erred in failing to address his request for substitute appellate counsel. In a November 2014 letter, defendant requested that he be appointed new appellate counsel. The trial court called a hearing, held on January 22, 2015, after it received a number of letters from defendant, in which defendant complained of appellate counsel's representation. At the hearing, the trial court recalled that one of defendant's complaints was that he did not have a copy of the transcripts. The trial court told defendant that it had asked its secretary to mail a copy of the transcripts to defendant. It then asked defendant if he had any other complaints. Defendant replied, "Basically that's really all." "It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). By stating that he had no other complaints regarding appellate counsel, defendant contributed to any error that

the trial court made in not addressing his request for substitute appellate counsel. Accordingly, defendant is not entitled to any relief for the alleged error.[5]

Finally, in his supplemental Standard 4 brief, defendant argues that he was denied the right to be tried by a jury drawn from a fair cross section of the community. We review this unpreserved claim of error for plain error affecting substantial rights, *Carines*, 460 Mich at 763.

The Sixth Amendment right to jury includes the right to an impartial jury drawn from a fair cross section of the community. *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). To establish a prima facie violation of the fair-cross-section requirement, a defendant must establish the following:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. [*Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979).]

Defendant makes no argument that applies the three prongs of the *Duren* test to the present case. Accordingly, he fails to establish plain error. *Carines*, 460 Mich at 763.

We affirm defendant's convictions, but we remand for correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray

---

[5] Defendant argues that he was denied a fair trial by the cumulative effect of the trial court's errors in acting as both the district court and the circuit court, denying his motion to recuse itself from further proceedings, refusing to provide defendant with copies of the transcripts and court documents, failing to hear his motion for substitute appellate counsel, and denying an adjournment after he retained counsel. However, because defendant fails to establish that any error occurred, the argument is without merit. See *Dobek*, 274 Mich App at 106.

-11-